IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANCISCO J. REYES,

      Plaintiff,

         v.

GOYA OF PUERTO RICO, INC.,

      Defendant

CIVIL NO.: 08-1576 (FAB/MEL)

**OPINION AND ORDER**

I.    **PROCEDURAL BACKGROUND**

On July 31, 2008, plaintiff, Francisco J. Reyes ("Reyes"), filed an amended complaint against Goya of Puerto Rico, Inc. ("Goya") alleging claims pursuant to: (1) the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335; and (2) Articles 1802 and 1803 of the Puerto Rico Civil Code, P. R. LAWS ANN. tit. 31, § 5141-5142. (Docket 13.) On November 4, 2008, Goya filed a motion to dismiss Reyes's claims pursuant to Article 1802 on the grounds that said claim is preempted by both USERRA and Puerto Rico Law 80 ("Law 80"), P. R. LAWS ANN. tit. 31, § 185a-185m. (Docket 19 at 3-5.) On July 9, 2009, the court denied Goya's motion to dismiss, declining to find that USERRA or Law 80 preempt Reyes's Article 1802 claim because Goya did not argue that such claims were "hinge[d] upon the same facts." (Docket 25 at 6-7.) Goya filed a motion for reconsideration, which was subsequently denied by the court. (Docket 28; Docket 29.)

On August 7, 2009, Goya filed a motion for partial summary judgment as to Reyes's state law tort claims on the same grounds as its previous motion to dismiss. (Docket 30.) On September 1, 2009, Reyes filed an opposition to the motion for partial summary judgment. (Docket 35.) On

Reyes v. Goya of Puerto Rico, Inc.
Civil No. 08-1576 (FAB/MEL)
Opinion and Order

September 14, 2009, Goya filed a reply to Reyes's opposition. (Docket 46.)

## II.   UNCONTESTED FACTS

Reyes began his employment as a Security Supervisor at Goya on November 23, 2001, after he and Goya's Vice-President, Remigio Nieves López ("Nieves"), executed a temporary employment contract. (Docket 30-2 at ¶ 1-2; Docket 35-2 at ¶ 1.1-1.2; Docket 39-2.) Reyes continued his employment at Goya until January 11, 2005, when he was called to active duty in the United States Army ("Army"). (Docket 30-2 at ¶ 3; Docket 35-2 at ¶ 1.3; Docket 39-3 at 12; Docket 13 at ¶ 4.3.) Reyes remained on active duty until January 10, 2008. Id. Plaintiff returned to employment with Goya on January 9, 2008, until his resignation on February 4, 2008. (Docket 30-2 at ¶ 4; Docket 35-2 at ¶ 1.4; Docket 39-4.)

Reyes's letter of resignation stated that:

[His] new employment conditions, such as the demotion from security director to a dispatch supervisor, the change from a day shift to a night shift with which [he] cannot comply and submitting [him] with humiliations by words or actions have created intolerable and unacceptable conditions that force [him] to resign to [his] employment.

(Docket 30-2 at ¶ 5; Docket 35-2 at ¶ 1.5; Docket 39-4.) Reyes admitted, however, in his deposition that upon his return from active duty he received the same salary as before his military service, including any salary increases to which he would have been entitled during his absence. (Docket 30-2 at ¶ 6; Docket 35-2 at ¶ 1.6; Docket 39-3 at 3.) Reyes stated that after January 9, 2008, Goya changed his position, rank, schedule, and supervisor, as well as depriving him of a cellular phone he was given prior to his military service. (Docket 30-2 at ¶ 7; Docket 35-2 at ¶ 1.7; Docket 39-3 at 7-8.) When asked about the nature of the "humiliations by words or actions" referred to in his

2

Reyes v. Goya of Puerto Rico, Inc.
Civil No. 08-1576 (FAB/MEL)
Opinion and Order

resignation letter, Reyes stated that he was called "cannon meat" by co-workers and supervisors, told that he did not have the same status and rank in front of other persons, subjected to extreme supervision, and told that because he had an education and experience he would be given an altered schedule and duties until he left Goya.  (Docket 30-2 at ¶ 8; Docket 35-2 at ¶ 1.8; Docket 39-3 at 13-17.) Reyes referred to the same conditions when describing what he considered to be a hostile work environment at Goya. (Docket 30-2 at ¶ 11; Docket 35-2 at ¶ 1.11; Docket 39-3 at 16-17.)

On June 2, 2008, Reyes filed a complaint in the Puerto Rico Court of First Instance pursuant to Law 80, alleging that he "was obligated to resign from his employment on February 4, 2008, due to the fact that the demotion and the changes in schedule created burdensome work conditions, a hostile environment and humiliations against [his] person." (Docket 30-2 at ¶ 10; Docket 35-2 at ¶ 1.10; Docket 19-3 at ¶ 8.)

## III.   LEGAL ANALYSIS

### A.   Summary Judgment Standard

Summary judgment may be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 (1986). After the moving party has satisfied this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). For issues where the opposing party bears the ultimate burden of proof, that party cannot

3

merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

To avoid summary judgment, the contested facts must be "material" and the dispute must be "genuine". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. Id. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. Id. It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id. at 252. It is therefore necessary that "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994) (quoting Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1993)).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citing Rossy v. Roche Prod., Inc., 880 F.2d 621, 624 (1st Cir. 1989)). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)." Greenburg v. P. R. Mar. Shipping Auth., 835 F. 2d 932, 936 (1st Cir. 1987).

*Reyes v. Goya of Puerto Rico, Inc.*
Civil No. 08-1576 (FAB/MEL)
Opinion and Order

When considering a request for summary judgment, unsettled issues of motive and intent as to the conduct of any party will normally preclude the court from granting summary judgment. Mulero-Rodríguez v. Ponte, Inc., 98 F. 3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "'determinations of motive and intent . . . are questions better suited for the jury'"); see also Tew v. Chase Manhattan Bank, N.A., 728 F. Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"). However, "'even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation.'" Ayala-Genera v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996) (quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993).

**B.     Law 80 and Article 1802**

Goya argues that Law 80 bars Reyes's claim under Article 1802. (Docket 30 at 3-5.) Law 80 is Puerto Rico's Wrongful Dismissal Act. The only remedy it provides to an employee who is discharged without just cause is entitlement to receive severance payment from his or her employer. P.R. LAWS ANN. tit. 29 § 185a. This payment consists of: (1) the salary the employee may have earned; (2) the salary corresponding to one month, as indemnity, if the employee was discharged within the first five years of service; the salary corresponding to two months if the employee was discharged after five years and up to fifteen years of service; and the salary corresponding to three months if the discharge was after fifteen years of service; and (3) an additional progressive

compensation equal to one week for each year of service. Id.  Pursuant to Law 80, a discharge may, *inter alia*, consist of:

> the resignation of the employee caused by the actions of the employer directed to induce or compel him to resign, such as imposing or trying to impose on him more onerous working conditions, reducing his salary, lowering his category or submitting him to derogatory criticisms or humiliations by deed or word.

P.R. Laws Ann. tit., 29 § 185e. In order to succeed on such a constructive discharge claim, a plaintiff must establish: "'(1) considerably serious actions by the employer that create an intimidating, hostile and offensive work environment; and (1) for the employee to have no other available alternative but to resign.'" Rivera Maldonado v. Hosp. Alejandro Otero López, 614 F. Supp. 2d 181, 199 (D.P.R. 2009) (quoting Rivera v. DHL Global Forwarding, 536 F. Supp. 2d 148, 156 (D.P.R. 2008)).

"In Puerto Rico the provisions of the Civil Code are supplementary to special legislation." Barreto v. ITT World Directories, Inc., 62 F. Supp. 2d 387, 393 (D.P.R. 1999) (citing Rosario v. Atlantic Southern Ins. Co., 95 P.R.R. 742, 747 (1968); Berrocales v. Tribunal Superior, 102 D.P.R. 224, 226 (1974); Rivera de Vicenti v. Colón, 103 D.P.R. 560 (1975)). Specifically in the labor and employment context, a plaintiff "'is barred from using [conduct covered by a specific labor law] to also bring a claim under Article 1802.'" Medina v. Adecco, 561 F. Supp. 2d 162, 175-76 (D.P.R. 2008) (quoting Denis Rosario v. McConnell Valdés, Civil No. 07-1508 (CCC), 2008 WL 509204, at *1-2 (D.P.R. Feb. 21, 2008)). Given that Law 80 is such special legislation, its provisions prevail over Article 1802 of the Puerto Rico Civil Code. See id.; Barreto, 62 F. Supp. 2d at 393. Inasmuch as Reyes's claims are based on conduct governed by Law 80, any claim pursuant to Article 1802 based on the same conduct would be barred under Puerto Rico law. See id. Reyes' Article 1802

Reyes v. Goya of Puerto Rico, Inc.
Civil No. 08-1576 (FAB/MEL)
Opinion and Order

claim can only survive if Goya "has engaged in some type of tortious conduct separate or independent from the termination of employment itself." See Barreto, 62 F. Supp. 2d at 395 (citing Rivera v. Sec. Nat'l Ins. Co., 106 D.P.R. 517, 527 (P.R. 1977); Vargas v. Royal Bank of Can., 604 F. Supp. 1036, 1040 (D.P.R. 1985)); Medina, 561 F. Supp. 2d at 175-76 (D.P.R. 2008) (citing Denis Rosario, 2008 WL 509204, at *1-2).

The facts alleged in Reyes's local court complaint in support of his Law 80 claim include "the demotion and the changes in schedule created burdensome work conditions, a hostile environment and humiliations against [his] person." (Docket 19-3 at ¶ 8.) Likewise, his deposition testimony and resignation letter refer to a hostile work environment, humiliations, and changes in his status, rank, schedule, supervisor, and fringe benefits as the basis for his claims in the present case. (See Docket 39-4; Docket 39-3 at 7-8, 13-17.) Given the statutory definition of discharge under Law 80 and the uncontested facts, it appears that the same facts underlying Reyes's claims in the federal forum deal with subject matter that properly constitutes a constructive discharge claim pursuant to Law 80. See Rivera Maldonado, 614 F. Supp. 2d at 199 (D.P.R. 2009); P.R. Laws Ann., tit. 29 § 185e; (Docket 39-4; Docket 39-3 at 7-8, 13-17.)

Furthermore, Reyes has not argued, or submitted evidence, that his Article 1802 claim is based on any conduct other than the circumstances that caused Reyes to submit his letter of resignation to Goya. (See Docket 35 at 5.) In arguing that his Article 1802 claim has a separate factual basis, Reyes states that his "damages stem from the hostile-work-environment harassment created by Goya to force the constructive discharge." Id. Said harassment, as described by Reyes's deposition and letter of resignation, however, is conduct which is covered by a constructive

7

Reyes v. Goya of Puerto Rico, Inc.
Civil No. 08-1576 (FAB/MEL)
Opinion and Order

discharge claim under Law 80. See Rivera Maldonado, 614 F. Supp. 2d at 199; P.R. LAWS ANN. tit.

29, § 185e; (Docket 39-4; Docket 39-3 at 7-8, 13-17.) Therefore, it appears that Reyes has failed to

raise a genuine issue of material fact as to separate and independent tortious conduct that could form

the basis of a proper Article 1802 claim.[1]

**III.   CONCLUSION**

For the reasons explained above, the motion for partial summary judgment is GRANTED

and Reyes's claims under Article 1802 and Article 1803 are hereby DISMISSED.[2]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of September, 2009.

s/Marcos E. López
U.S. MAGISTRATE JUDGE

---

[1] Given that Reyes's Article 1802 claim is barred by Puerto Rico law, it is unnecessary to decide whether said claim is preempted by USERRA.

[2] Reyes also alleges a claim pursuant to Article 1803. (Docket 13 at ¶ 2.3.) Article 1803 is a vehicle for the imposition of vicarious liability based on an Article 1802 claim. See P.R. LAWS ANN. tit. 31, § 5142. Having determined that Reyes's Article 1802 claim is barred by Law 80, any derivative Article 1803 claim is likewise barred.